Bell, J.,
 

 dissenting. I am unable to agree with the ■conclusion reached by the majority. The factual situation as I construe the record is substantially as follows : In 1939, Crown Hill Cemetery Association made application for exemption from taxation of certain described property upon the ground that “the property described herein is used for cemetery purposes only. It is not operated.for profit.” The Board of Tax Appeals, on April 2, 1940, denied the application. A rehearing was granted and thereafter on December 2, 1943, the application was again denied.
 

 In 1929, a nonprofit corporation was formed for the purpose of acquiring land and establishing a cemetery
 
 *406
 
 for the burial of human remains. That corporation was known as Paradise Park, Inc., and in 1937 the name was changed to Crown Hill Cemetery Association. The property was laid out in sections and the sections were divided into lots containing varying numbers of spaces for graves. Prior to 1937 the burial rights in the lots were sold in large quantities to individual purchasers, and some creditors accepted burial rights at a fixed price in payment of obligations due them. No such transactions were countenanced after 1937. There is no direct evidence that these lots or burial rights were held with a view to profit; however the instruments of conveyance permitted unrestricted transfer, permitting the holders thereof to sell such rights for the best price obtainable and the association was bound to recognize the sales.
 

 The material portion of the finding of the Board of Tax Appeals is set forth in the majority opinion.
 

 For the purpose of this case I shall assume that the General Assembly, under the grant of authority found in Section 2, Article XII of the Constitution, had authority in enacting Sections 5350 and 10093, General Code, to attach the condition that lands used exclusively as graveyards shall be exempt from taxation if not held “with a view to profit.”
 

 Those sections, in my judgment, mean that the person or corporation making the application must hold the lands or a part thereof for the purpose of speculating in the sale thereof or with a view to profit in order to render such lands taxable.
 

 The construction placed upon the statutes by the majority makes the approval or denial of the application dependent upon the intentions or actions of third persons in nowise connected with the cemetery association.
 

 The conclusion of the majority would seem to be
 
 *407
 
 bottomed upon the case of
 
 Ivy Hill Cemetery Company’s Appeal,
 
 120 Pa. Super., 340, 183 A., 84.
 

 Section 2, Article XII of the Ohio Constitution and Section 1, Article IX of the Pennsylvania Constitution are similar in language and purport.
 

 The question in that case was whether the land and a mausoleum constructed thereon, within the cemetery, were tax exempt. The facts were that Ivy Hill Mausoleum Company ( a copartnership) entered into a written contract with Ivy Hill Cemetery Company by the terms of which the mausoleum company paid the cemetery company the sum of $10,000 for the use of a parcel of land containing approximately 7,000 square feet and also paid $15,000 to be retained as an endowment fund, the income to be used in the maintenance and repair of the building. The mausoleum company had no interest in the land or building except that it retained the right to sell crypts at its price.
 

 It was virtually admitted that the mausoleum company expected to clear $145,000 profit. At the time the assessment was made a large number of the crypts were still unsold.
 

 The'Superior Court of Pennsylvania upon that state of facts held that the land and building were not exempt from taxation. However the court carefully pointed out that a different situation would arise after all the crypts were sold.
 

 The Supreme Court of Georgia, in the case of
 
 Georgia Mausoleum Co.
 
 v.
 
 City of Dublin,
 
 147 Ga., 652, 95 S. E., 233, held:
 
 *408
 
 made of the property, and not the purchase and sale thereof, which determines the matter of taxation. See
 
 Trustees
 
 v.
 
 Bohler,
 
 80 Ga., 159, 164 (7 S. E., 633);
 
 Metairie Cemetery Assn.
 
 v.
 
 Board of Assessors,
 
 37 La. Ann., 32; 37 Cyc., 945, and note.”
 

 
 *407
 

 “2.
 
 While the private corporation was engaged in acquiring cemetery lots, and constructing mausoleums thereon for the purpose of pecuniary gain and profit to be derived from such business, the mausoleums, when constructed, were not used for purposes of private or corporate profit or income, but were used solely for the purpose of burying the dead. It is the use
 

 
 *408
 
 The Constitution of Louisiana at the time of the decision in the case of
 
 Metairie Cemetery Association
 
 v.
 
 Board of Assessors,
 
 37 La. Ann., 32, expressly exempted from taxation “all places of burial, provided such exempted property be not used or leased for purposes of private or corporate profit or income.”
 

 At page 36 the court used this language:
 

 “In establishing this exemption, the law concerns itself exclusively with the quality and use of the property, and not at all with its ownership or disposition. So long as it retains the character of a ‘place of burial/ it matters not who owns it, how often it may change hands nor at what prices — as a ‘place of burial,’ it remains exempt. The sale of property is not an
 
 use
 
 of it within any signification, technical or general, of that word.
 

 “Every cemetery belongs to some owner; and the-lots therein are not usually given away, but are sold to persons desiring to acquire them for purposes of interment. If the law had intencled to exempt such ‘places of burial,’ only on condition that they should not be sold, it would have said so. Under such construction, the unoccupied lots of perhaps every cemetery in New Orleans, would be equally liable to taxation with those of plaintiff. Indeed, churches, hospitals, orphan-asylums and other exempt property are equally subject to be sold at the will of the owners, and on the same-theory might lose their exemption. Possible profits on such sales are not matters of judicial concern.”
 

 That the property here in question as a whole and in all its parts is a cemetery is beyond cavil.
 

 It was dedicated and is used solely for the purpose-
 
 *409
 
 of burial of the dead. The
 
 use
 
 being the basis of the exemption, the sale of the burial rights, either as single units or in large quantities, does not affect the use,, and possible profits upon such sales do not destroy the exemption.
 

 There is no evidence in this record that any lot or burial right was sold at a profit or that any of the-holders intended such a result.
 

 From the fact that some persons bought these burial, rights in considerable number, the Board of Tax Appeals inferred that such burial rights were held ‘ ‘ with a view to profit” and therefore denied the application for exemption. Such a conclusion in my judgment was-unreasonable and the order should be reversed.
 

 Hart and Williams, JJ., concur in the foregoing dissenting opinion.