JEROME E. RUZICKA *vs.* COMMISSIONER OF THE
DEPARTMENT OF EMPLOYMENT AND TRAINING.

No. 92-P-1067.

Middlesex. November 10, 1993. - March 11, 1994.

Present: BROWN, FINE, & GREENBERG, JJ.

*Employment Security*, Base earnings requirement, Eligibility for benefits.

Where an employee, upon termination of employment, received a lump
sum payment equivalent to six months' wages pursuant to an agreement
with his employer, and the Department of Employment and Training
thereafter denied his claim for unemployment benefits on the basis of
its determination that the lump sum payment was continuation pay and
thus remuneration under G. L. c. 151A, § 1 (*r*) (3), the statutory
scheme required the department to treat the lump sum payment as
wages continually received during the base period provided by G. L. c.
151A, § 24 (*a*), for purposes of establishing the employee's eligibility
when he reapplied for benefits. [217-220]

CIVIL ACTION commenced in the Concord Division of the
District Court Department on September 19, 1991.

The case was heard by *Frederick V. Gilgun*, J.

*Martin J. Alperen* for the plaintiff.

*Patricia Preziosa*, Assistant Attorney General, for the
Commissioner of the Department of Employment and
Training.

*Peter Benjamin & Allan G. Rodgers*, for Hoia K. Vu &
another, amici curiae, submitted a brief.

BROWN, J. This is an appeal from a judgment entered in
the District Court affirming the denial of unemployment ben-
efits to the plaintiff, Jerome E. Ruzicka. On July 2, 1991, the
Department of Employment and Training (DET) found Ru-

zicka to be ineligible within the meaning of G. L. c. 151A, § 24(a),[1] for financial benefits.

The plaintiff worked for Barry Wright Corporation until February 9, 1990, when he was separated from his employment. Upon termination, he received a single, lump sum payment equivalent to six months' wages, pursuant to an agreement with his employer. In addition, his medical and life insurance coverage was continued for the six-month period. When Ruzicka applied for unemployment benefits in March of 1990, DET determined that he was ineligible because the lump sum payment was continuation pay and thus remuneration under the provisions of G. L. c. 151A, § 1(r)(3).[2] DET informed Ruzicka that, because the lump sum would be deemed to apply to that six-month period, he would not be eligible for benefits until August 11, 1990. The plaintiff does not contest this determination.

Ruzicka became a self-employed consultant from May, 1990 until May, 1991. Because he was self-employed, he did not reapply for benefits in August, 1990. After he lost his consulting work in May, 1991, however, he reapplied for unemployment benefits on June 15, 1991. The base period for his new claim was determined to be June 10, 1990, through June 8, 1991.[3] This period included the last two months

---

[1]General Laws c. 151A, § 24, as amended through St. 1977, c. 720, § 26, provides in pertinent part, "An individual, in order to be eligible for benefits under this chapter, shall —

"(a) Have been paid wages in the base period amounting to at least thirty times the weekly benefit rate, but not less than twelve hundred dollars . . . ."

[2]General Laws c. 151A, § 1(r)(3), as appearing in St. 1957, c. 632, provides in pertinent part as follows: "Remuneration shall be deemed to have been received in such week or weeks in which it was earned or for such week or weeks, including any fractions thereof, to which it can reasonably be considered to apply. If the length of the period to which the remuneration applies is not clearly identified, such period shall be determined by dividing such remuneration by the amount of the individual's average weekly wage." See also note 5, infra, in regard to the "continuation pay" distinction.

[3]"Base period" is defined as "the period of fifty-two consecutive calendar weeks ending with the day immediately preceding the first day of a claimant's benefit year . . . ." G. L. c. 151A, § 1(a), as appearing in St. 1970, c. 703, § 1.

(June and July, 1990) of the time Ruzicka was deemed by DET to have received remuneration in the form of a lump sum payment from Barry Wright Corporation. DET denied the claim, reasoning that Ruzicka had not been "paid wages in the base period" as required by G. L. c. 151A, § 24(*a*). The plaintiff appealed from DET's decision to the District Court, which affirmed, and this appeal ensued.

This case turns on the interpretation of several sections of the Massachusetts Employment Security Law, G. L. c. 151A, particularly, §§ 1(*r*)(3), (1)(*s*), 24, and 31.[4] At issue is the treatment, for purposes of unemployment benefit eligibility, of lump sum payments received at separation. In order to be eligible, Ruzicka must have earned wages within the statutory base period preceding his claim. The question is whether lump sum payments deemed remuneration by DET should count as "wages earned" for subsequent unemployment benefits claims.

Until 1992, DET distinguished between "severance pay," which was not considered remuneration, and "continuation pay," which was.[5] The theoretical construct that underlies the treatment of "continuation pay" as remuneration, and that now underlies the treatment of all lump sums received at separation as remuneration, is one of a continuing employment relationship. The attribution of lump sums to periods after their receipt effectively satisfies DET's concern that, to limit eligibility, claimants ought to have a "minimum level of earnings as a prerequisite." *Naples* v. *Commissioner of Dept. of Employment & Training*, 412 Mass. 631, 634 (1992).

---

[4]"[T]o the extent that an agency determination involves a question of law, it is subject to de novo judicial review" (citation omitted). *Raytheon Co.* v. *Director of Div. of Employment Sec.*, 364 Mass. 593, 595 (1974). *See Merisme* v. *Board of Appeals on Motor Vehicle Liab. Policies & Bonds*, 27 Mass. App. Ct. 470, 473 (1989).

[5]Statute 1992, c. 118, § 4, applicable to claims filed on or after September 6, 1992, added "severance pay" to the definition of disqualifying remuneration under G. L. c. 151A, § 1(*r*)(3), thus eliminating the distinction between "severance pay" and "continuation pay" made by the Supreme Judicial Court in *Bolta Prod. Div.* v. *Director of Div. of Employment Sec.*, 356 Mass. 684 (1970), and *Itek Corp.* v. *Director of Div. of Employment Sec.*, 398 Mass. 682 (1986).

If the individual is treated as still sufficiently connected with the employer so that he is not in "unemployment" by virtue of the receipt of "remuneration," then he or she has demonstrated the sort of recent connection with the labor market for which the minimum earnings requirement is the test. DET's allocation of continuation pay (and severance pay as well, under the amended § 1[r][3]) to a period after its receipt treats it as, in effect, a private substitute for unemployment compensation. Once the period of allocation of the lump sum ends, however, the claimant is in the same position as any other newly unemployed worker, i.e., in need of the financial support of unemployment benefits. To refuse to treat a lump sum as wages constructively received during the base period frustrates the fundamental purpose of the statute and leaves workers who are now effectively newly unemployed without any benefits to support themselves and their families.

DET concedes, in the instant case, that continuation pay is included within the term "wages" under § 1(s)[6] but contends that it is to be treated, in a lump sum case, as all paid when it is received, regardless of whether DET deems it to be constructively received over a period of weeks under § 1(r)(3). The impact of this analysis on Ruzicka is that the continuation pay that he received in February, 1990, as a lump sum serves to disqualify him from receiving benefits for the six-month period immediately following his separation from his employer, yet, for the purposes of establishing a base period of earned wages, the continuation pay does not serve to establish monetary eligibility under § 24(a).[7] Such a

---

[6]"Wages" is defined as "every form of remuneration of an employee subject to this chapter for employment by an employer, whether paid directly or indirectly, including salaries, commissions and bonuses . . . ." G. L. c. 151A, § 1(s), as amended by St. 1954, c. 279, § 1.

[7]DET also argues that G. L. c. 151A, § 31, the "performed service" requirement, bars Ruzicka's claim. Section 31, as amended through St. 1971, c. 940, § 18, states in relevant part that "[n]o individual may receive benefits . . . unless . . . he performed service and has been paid wages for such service . . . ." Consistency and logic support an interpretation of § 31 that would deem service performed during whatever period of time the continuation pay is applied to. See *Itek Corp.* v. *Director of Div. of*

result is perverse and results in an illogical scheme that could not have been intended by the Legislature when it enacted the relevant provisions of the Employment Security Law.[8] Cf. *Morales* v. *Commissioner of Pub. Welfare*, 18 Mass. App. Ct. 239, 244 (1984) (adopting a "common-sense interpretation" of the relevant provisions rather than the "department's interpretation of its regulations [that] seems inconsistent with their terms").

We adopt an interpretation of the statute that harmonizes the statutory provisions and leads to a more just and equitable result.[9] We think that continuation pay should be treated as wages earned and paid during the period to which they are applied for the purposes of both § $1(r)(3)$ and § $24(a)$. Instead of being treated as paid at the time the lump sum is actually received (in this case, February, 1990), continuation pay would be spread over the "continuation period." Such a construction is consistent with the principal statutory purpose of c. 151A, which is to "lighten the burden which now falls on . . . unemployed worker[s] and [their] famil[ies]." G. L. c. 151A, § 74, as amended by St. 1990, c. 177, § 340. See *Emerson* v. *Director of Div. of Employment Sec.*, 393 Mass. 351, 352 (1984). See also *Morales* v. *Commissioner of Public Welfare*, 18 Mass. App. Ct. at 242 n.5.

We conclude that DET committed an error of law in its interpretation and application of G. L. c. 151A, § $24(a)$. See G. L. c. 30A, § 14(7). Moreover, "we [are] led to the interpretation which we have given to the statute by considering the harsh and counterproductive result which would

---

*Employment Sec.*, 398 Mass. 682 (1986). Just as, under § $1(r)(3)$, continuation pay is constructively received during the period "to which it can reasonably be considered to apply," so the underlying service to the employer should be deemed to be performed during the same time period.

[8]It may be said, along the same lines, that DET's effort to have it both ways brings to mind the old saying — "Heads I win, tails you lose." Fortunately, the law is otherwise, i.e., based on concepts of mutuality, fairness, and consistency.

[9]Amici curiae present a series of hypothetical examples that demonstrate clearly the arbitrary and unfair results of DET's interpretation of the statute, all of which hinge on the fact that the entitlement of a claimant to benefits depends entirely on *when* the claimant files a claim.

follow from denying the claimant benefits." *Emerson, supra* at 353. Concomitantly, "we are guided by the principle that, '[w]here the draftsmanship of a statute is faulty or lacks precision, it is our duty to give the statute a reasonable construction.'" *Capone* v. *Zoning Bd. of Appeals of Fitchburg*, 389 Mass. 617, 622 (1983), quoting from *School Comm. of Greenfield* v. *Greenfield Educ. Assn.*, 385 Mass. 70, 79-80 (1982). The impact of DET's interpretation is clear: had Ruzicka opted not to engage in self-employment, he would have been eligible to apply for unemployment benefits in August of 1990. Contrary to the assertions of DET, Ruzicka is not seeking to base his claim on ineligible self-employment. He merely seeks to be treated as if he had actually worked during the period from June 10 to August 11, 1990, consistent with DET's treatment of him on his first claim. "The effect [of DET's interpretation] is to reward the idle and punish the ambitious. We shall not lend judicial approval to this result." *Ibid.*

We reverse the judgment affirming the denial of unemployment benefits to the plaintiff and remand the matter to the District Court for entry of a new judgment consistent with this opinion.

*So ordered.*